IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BIRGIT M. SMITH, | ) |
|     Plaintiff, | ) ) ) |
| v. | )    CIV-12-1092-M ) ) |
| CAROLYN W. COLVIN, <br>   Acting Commissioner of Social <br>    Security Administration, <br>     Defendant. | ) ) ) ) ) |

## REPORT AND RECOMMENDATION

Plaintiff, who appears *pro se* and *in forma pauperis*, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On February 24, 2009, Plaintiff filed an application seeking benefits. (TR 95-96). Plaintiff alleged that she was disabled beginning August 19, 2001, due to carpal tunnel

1

surgery in both hands, ulnar nerve surgeries in both elbows, rotator cuff surgery in her left shoulder, degenerative disc disease, arthritis, bursitis in her right hip, congenital deafness in her left ear, 30% reduction in hearing in her right ear, and back pain. (TR 95, 117). Plaintiff described past relevant work as a cashier, school crossing guard, greeter, mailroom clerk, and self-employed sales representative. (TR 118, 128-135, 157-164, 198).

Plaintiff described her usual daily activities in a written report submitted to the agency, and her husband provided a third-party report of her daily activities. (TR 141-148, 149-156). The agency determined that Plaintiff's insured status for the purpose of Title II benefits expired on September 30, 2005. (TR 20, 113).

At a hearing conducted on March 30, 2010, before Administrative Law Judge Moser ("ALJ"), Plaintiff testified that she was 52 years old and a high school graduate with cosmetology training. Plaintiff stated she stopped working in August of 2001 when her employer "went out of business." (TR 34). However, Plaintiff stated she worked after that date as a school crossing guard in 2003. She had carpal tunnel surgery in 2005 and only occasionally experienced residual pain. Plaintiff testified that she used a cane for walking and that the cane was prescribed by Dr. Carl the previous year. Plaintiff testified that Dr. Kumar had "just diagnosed" her with rheumatoid arthritis. (TR 37). Plaintiff testified that she was deaf in her left ear and had only 30% hearing ability in her right ear but her hearing was unimpaired unless the individual speaking to her was "soft spoken." (TR 40).

Plaintiff's husband testified that Dr. Carl performed an "ablation procedure" that relieved Plaintiff's back pain. (TR 42). Plaintiff's husband also testified that she must use

a cane for "any long" walking because "her right leg will drag behind her," and that she had been using the cane for about two years. (TR 42). At home, her husband stated that she does the laundry and some cooking but vacuuming causes back pain. (TR 43). Her family doctor prescribed anti-depressant medication, but she was not receiving other mental health treatment. A vocational expert ("VE") also testified at the hearing.

The ALJ issued a decision in June 2010 finding that Plaintiff was not disabled within the meaning of the Social Security Act because she could perform her past relevant work as a mail clerk, inserter, and crossing guard. (TR 18-23). The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not

3

substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. ALJ's Decision

The ALJ found that Plaintiff "last met the insured status requirements of the Social Security Act on September 30, 2005." (TR 20). Following the agency's well-established sequential evaluation procedure, the ALJ found at step two that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of August 19, 2001, through her last insured date of September 30, 2005. (TR 20). Further, the ALJ found that Plaintiff had severe impairments through her date last insured of arthritis and congenital left ear deafness. (TR 20). At step three, the ALJ found that through her date last insured Plaintiff did not have an impairment or combination of impairments that was *per se* disabling under the agency's Listing of Impairments.

At step four, the ALJ found that through her date last insured Plaintiff had the residual functional capacity ("RFC") to perform work involving "light" exertion with only occasional bending, stooping, crouching, or crawling. (TR 20). In connection with this finding, the ALJ considered the objective medical evidence in the record and Plaintiff's subjective statements concerning her functional abilities.

The ALJ reasoned that much of the objective medical evidence in the record addressed the period of time after the Plaintiff was last insured for disability insurance benefits and those parts of the record were of "limited probative value." (TR 21). The ALJ reviewed the relevant medical evidence and Plaintiff's statements concerning her activities and concluded

4

that her medical treatment during the period of time prior to the expiration of her insured status was "extremely limited, contraindicating a disabling level of functional impairment." (TR 21-22). Based on the VE's testimony concerning the demands of Plaintiff's previous jobs, the ALJ found that Plaintiff was not disabled because she retained the capacity to perform three of her previous jobs prior to the date she was last insured for Title II benefits.

IV. Analysis

Plaintiff's statements in her brief indicate that Plaintiff either does not comprehend or has misinterpreted the limitations attached to the expiration of her insured status. She incorrectly asserts that she has been disabled "since the onset date of 30 Sept. 2005 through my date last insured of Feb. 22 2009." Plaintiff's Opening Brief, at 1. In her application, Plaintiff alleged that she became disabled on August 19, 2001. (TR 95). Nothing in the record reflects that Plaintiff ever amended her alleged disability onset date. Moreover, the agency determined that Plaintiff's insured status for the purpose of Title II disability insurance benefits expired on September 30, 2005. Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of [her] insured status" on September 30, 2005. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

In her brief, Plaintiff asserts that Dr. Kumar imposed physical limitations upon her ability to work, including lifting and/or carrying of up to ten pounds occasionally, sitting up

5

to two hours a day, and standing and walking of only one hour at a time or four hours in an 8-hour workday, which she asserts is less than a sedentary RFC.

Plaintiff does not provide any reference to the portion of the medical record containing the alleged RFC findings by Dr. Kumar. No such assessment is found in the medical record submitted by Plaintiff. Plaintiff stated that she did not begin treatment with Dr. Kumar until March 2009, and the records submitted by Plaintiff reflect treatment by Dr. Kumar beginning in March 2009 through September 2009. (TR 188, 628-658). Consequently, any assessment by Dr. Kumar of Plaintiff's functional abilities on or after the date she was last insured for Title II benefits, even if such an assessment appeared in the record, would not be relevant to the issue of her disability on or before the date her insured status expired in September 2005.

Plaintiff asserts in her brief that the ALJ erred by failing to find that she has other severe impairments, including anxiety, depression, rheumatoid arthritis, degenerative disk disease, asthma, reduced hearing acuity in her right ear, and "cognitive impairments" apparently related to attention deficit-hyperactivity disorder ("ADHD"). Plaintiff's mere suggestion that treating doctors had diagnosed other significant physical or mental impairments, beyond the two impairments found by the ALJ, during the relevant time period is not sufficient. See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997)(diagnosis alone is not sufficient to establish a severe impairment; claimant must show more than mere presence of condition at step two).

The ALJ's decision reflects consideration of the medical and nonmedical evidence, and there is substantial evidence in the record to support the ALJ's step two findings of

6

severe impairments. With respect to her hearing impairment, Plaintiff testified that she could hear without difficulty under most circumstances. The ALJ considered Plaintiff's hearing difficulty and aptly noted that Plaintiff had previously worked "successfully despite her congenital partial deafness." (TR 22).

With respect to her physical impairments, the medical record reflects that Plaintiff's osteoarthritis in her right hip was found to be "minor" in December 2008, well after her insured status expired. (TR 714). Only "minimal" or "mild" degenerative changes were noted in Plaintiff's lumbar spine in MRI testing conducted in October 2007, again well after her insured status expired. (TR 716). Plaintiff's treating physician noted she was doing well in January 2006 following her right ulnar nerve release surgery. (TR 602). With respect to her alleged mental impairments, Plaintiff's treating physician noted that Plaintiff refused mental health counseling in February 2005, that her depression and anxiety were "controlled" on medication in November 2005, and that Plaintiff's anxiety was "stable" in January 2006 on medication. (TR 602, 604, 613).

Plaintiff reported to a treating physician in February 2005 that she was caring for her grandson, and she reported in March 2005 that she was bowling three hours a week. (TR 611, 612). A treating physician noted in June 2007 that Plaintiff walked with a normal gait and exhibited normal range of motion in her lumbar spine. (TR 553). Nothing in the medical record indicates a diagnosis of or treatment for ADHD or other cognitive impairments. Nor is there any evidence in the record to support Plaintiff's conclusory statements that her mental impairments were *per se* disabling or that she was limited to sedentary work activities

by back or other physical impairments during the relevant time period.

The VE testified that Plaintiff's previous job as an inserter was light, unskilled work, that her previous job as a crossing guard was light, unskilled work, and that her previous job as a mail clerk was light, unskilled work. (TR 46-47). A medical consultant reviewed the medical record and opined in April 2009 that prior to September 30, 2005, Plaintiff had the ability to perform work at the medium exertional level without postural or manipulative limitations. (TR 490-497). Another medical consultant opined in July 2009 that between August 19, 2001 and September 30, 2005, Plaintiff had medically-determinable impairments of depression and anxiety but insufficient evidence in the record that these impairments had resulted in any functional limitations. (TR 498-508).

There is substantial evidence in the record to support the ALJ's step four determination that Plaintiff was capable of performing these previous jobs on or before the expiration of her insured status in September 2005. Consequently, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before     October 21st    , 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling.

Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   30th   day of   September  , 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE